UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAWN MICHELE JACKSON, | No. 2:13-CV-3071-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 21, 23. Attorney D. James Tree represents Dawn Michele Jackson (Plaintiff); Special Assistant United States Attorney Gerald J. Hill represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on January 17, 2007, alleging disability since November 1, 2006. Tr. 109, 117. Plaintiff alleges disability due to depression and joint pain. Tr. 145. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Douglas Stults held a hearing on September 1, 2009, Tr. 23-48, and issued an unfavorable decision on December

16, 2009, Tr. 10-20.  Plaintiff appealed the decision to the United States District Court, and, on April 9, 2012, Magistrate Judge Cynthia Imbrogno remanded the matter for additional proceedings.  Tr. 427-441.  Judge Imbrogno's thorough remand order indicated that (1) ALJ Stults erred at Step Five because the vocational expert's testimony regarding the occupation of almond blancher conflicted with the definition provided in the Dictionary of Occupational Titles; (2) ALJ Stults erred by failing to provide germane reasons for rejecting Crisis Case Manager Cindy Gregory's opinions; and (3) ALJ Stults failed to include the handling restrictions found by Tanvir Ahmad, M.D., in his RFC determination.  *Id.* With respect to Plaintiff's argument as to Crystal Coffey, Pharm.D., Judge Imbrogno concluded ALJ Stults provided a germane reason for giving little weight to her opinions about Plaintiff's mental functioning.  Tr. 437-439.[1]  The Appeals Council vacated the original decision and remanded the case.  Tr. 449.

A new hearing was conducted by ALJ Laura Valente on February 12, 2013. Tr. 375-408.  ALJ Valente issued a partially favorable decision on April 26, 2013. Tr. 324-338.  ALJ Valente found Plaintiff met the Listings criteria of sections 12.04 and 12.06 beginning on May 21, 2009.  Tr. 334-337.  Plaintiff filed this action for judicial review on July 11, 2013, ECF No. 1, challenging ALJ Valente's determination that Plaintiff was not disabled prior to May 21, 2009, Tr. 324-334.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decisions, and the briefs of the parties.  They are only briefly summarized here.

---

[1]Judge Imbrogno determined the ALJ provided a germane reason for giving little weight to Ms. Coffey's opinions about Plaintiff's mental health functioning – the mental health evaluation of Plaintiff was outside Ms. Coffey's expertise in medication management.  Tr. 439.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

Plaintiff was born on April 12, 1961, Tr. 28, and was thus 45 years old on the November 2006 alleged onset date. Plaintiff has an eighth grade education. Tr. 28. Plaintiff testified at the September 2009 administrative hearing that she continued to work on a part-time basis cleaning vacant apartments after the alleged onset date (in 2007 and 2008). Tr. 29-31.

Plaintiff testified in September 2009 she spent her days working in her yard. Tr. 34. She indicated she prepared her own meals, performed housecleaning activities, did her own laundry, shopped for groceries and cared for a dog. Tr. 34-35. Plaintiff stated she would draw and work in her yard for recreation, visited her children and a grandchild, and attended church at least twice a month. Tr. 35-36.

At the February 2013 hearing, counsel for Plaintiff stated Plaintiff had spent the last two-and-a-half years living in a storage shed and had just moved into a house a couple of months prior to the hearing. Tr. 385. Plaintiff indicated she was not currently attending mental health treatment because counselors only wanted to talk to her "girls," who are apparently two auditory hallucinations. Tr. 387. She testified she did not have a problem with drugs or alcohol: she did not drink, do drugs or take "mental health pills." Tr. 392. When asked if she had ever used drugs like methamphetamines, she stated it was "[her] business if [she] ever used drugs." Tr. 392. When asked a second time whether she had ever used drugs, Plaintiff responded "no." Tr. 393. Plaintiff was upset and emotional throughout the hearing and eventually exited the hearing prior to its conclusion. Tr. 399.

## ADMINISTRATIVE DECISION

ALJ Valente found that although Plaintiff had worked after November 1, 2006, the alleged disability onset date, Plaintiff had not engaged in substantial gainful activity since that date. Tr. 327. The ALJ determined, at step two, that Plaintiff had the following severe impairments since the alleged onset date: schizoaffective disorder, depressive type; adjustment disorder; anxiety disorder; personality disorder; and alcohol abuse, in remission. Tr. 327. The ALJ noted

Plaintiff also had the severe impairment of degenerative disk disease of the lumbar spine since May 14, 2009.  Tr. 327.  At step three, the ALJ concluded Plaintiff did not meet or medically equal one of the listed impairments prior to May 21, 2009, Tr. 328, but, beginning on May 21, 2009, the severity of Plaintiff's impairments met the criteria of sections 12.04 (affective disorders) and 12.06 (anxiety related disorders), Tr. 334.  The ALJ assessed Plaintiff's RFC and determined that, prior to May 21, 2009, Plaintiff could perform medium work with the following limitations:  she was limited to simple work; she had sufficient concentration to understand, remember and carry out simple, repetitive tasks; she could sustain attention and concentration in two hour increments with usual and customary breaks throughout an eight-hour workday for simple, repetitive tasks; she could work in proximity to an unlimited number of coworkers, but could not work in coordination with them; she was not likely to be a distraction to her coworkers; she could respond to simple workplace changes as would be consistent with simple, repetitive tasks; she could set work-related goals as would be required for simple, repetitive tasks; she required hands-on demonstration to initially learn new tasks; and she required an additional 10 minutes per day during the initial learning period to learn the new tasks.  Tr. 329.

At step four, the ALJ found that, prior to May 21, 2009, Plaintiff was capable of performing her past relevant work as a home attendant, janitor, floor attendant, automobile self-serve gas station attendant and cleaner/housekeeper.  Tr. 332.  In the alternative, at step five, the ALJ concluded that, prior to May 21, 2009, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were jobs existing in significant numbers in the national economy that Plaintiff could have performed.  Tr. 333-334.  The ALJ thus determined Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 1, 2006, the alleged onset date, until the date of May 21, 2009, Tr. 334, but was disabled, within the meaning of

the Social Security Act, beginning on May 21, 2009, Tr. 337.  Because Plaintiff's date last insured was September 30, 2007, Plaintiff was not insured as of the date disability was established, May 21, 2009.  Tr. 337.  Consequently, Plaintiff's claim for a period of disability and disability insurance benefits was denied by ALJ Valente.  Tr. 337.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo.  *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the

Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

Plaintiff contends the ALJ erred by (1) improperly rejecting the opinions of Plaintiff's examining medical sources prior to May 2009 and a portion of Dr. Thompson's June 2009 medical record; (2) conducting an improper credibility analysis of Plaintiff; (3) failing to conclude that, prior to May 21, 2009, Plaintiff was presumptively disabled under Listing 12.04; and (4) failing to incorporate all of Plaintiff's limitations into her RFC determination and the hypotheticals presented to the vocational expert.  ECF No. 21 at 4.

### DISCUSSION

### A.  Mental Limitations

Plaintiff argues the ALJ erred by failing to properly consider the severity of Plaintiff's mental health limitations prior to May 21, 2009.  ECF No. 21 at 12-19. Plaintiff specifically asserts the ALJ erred by failing to accord weight to the opinions of her examining medical sources, Dr. Billings, Ms. Rowe, Ms. Gone and Ms. Rapisarda, and by improperly rejecting a portion of Dr. Thompson's opinion. ECF No. 21 at 12.  Plaintiff contends that if the opinions of these medical professionals were credited, the evidence would demonstrate Plaintiff was disabled prior to May 21, 2009.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  This Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  When the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ found that, prior to May 21, 2009, Plaintiff had mild restrictions in activities of daily living, moderate difficulties with social functioning, and

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

moderate difficulties with regard to concentration, persistence or pace.  Tr. 328.
The ALJ's mental RFC determination restricted Plaintiff to simple, repetitive tasks,
with several non-exertional limitations.  Tr. 329.  The ALJ indicated the record
reflected no mental health treatment prior to May 2009 and concluded the little
medical evidence existing prior May 2009 was consistent with her RFC
determination.  Tr. 330.  The Court finds the ALJ's interpretation of the medical
evidence with respect to Plaintiff's mental functioning in this case is supported by
substantial evidence.  *See infra*.

### 1.    Dr. Billings – August 29, 2006, Psychological Evaluation

On August 29, 2006, Plaintiff was examined by Emma Joan H. Billings,
Ph.D. Tr. 535-540.  Plaintiff indicated she had experienced depression in the past,
which had remitted, but had current depression, which had been present for
approximately one year.  Tr. 535.  She complained of poor sleep (four hours of
sleep at night), weekly nightmares, and feeling tired all the time.  Tr. 536.  Plaintiff
reported to living alone and having a good relationship with her two adult children,
whom she saw and spoke with often.  Tr. 535.  She stated she socialized with her
son on a regular basis, her hobbies included writing in a journal, drawing and
growing flowers, and she would walk approximately two miles every day.  Tr. 537.
She indicated she generally spent her day writing in her journal or working in her
garden.  Tr. 537.  Plaintiff reported she had no difficulty completing her household
chores, cooked her own meals, washed her own clothes, shopped for groceries,
worked in the yard (pulling weeds, mowing the lawn and taking care of flowers),
and completed her own personal grooming tasks.  Tr. 537.  She rated her level of
depression as a five on a scale of one to 10, reported she did not like to be around
people, indicated she experienced anxiety but had never experienced a panic
attack, denied obsessive behaviors or difficulties with anger control, reported she
had engaged in self-destructive behaviors, and indicated she heard three voices in
her head.  Tr. 537-538.  She additionally denied negative consequences from her

reported limited alcohol consumption and denied using illegal drugs over the past several years.  Tr. 538.

Dr. Billings indicated Plaintiff presented as a highly depressed individual with a poor social presentation.  Tr. 539.  It was noted Plaintiff had difficulty controlling her emotions throughout the entirety of the interview.  Tr. 539.  Dr. Billings opined that Plaintiff appeared to have some memory difficulties, which may affect her ability to maintain attention and focus, and the paranoid nature of her statements appeared to represent a delusionary belief.  Tr. 539.  She diagnosed Plaintiff with Schizoaffective Disorder, depressive-type, and Anxiety Disorder, NOS, and gave Plaintiff a Global Assessment of Functioning (GAF) score of 50.[2]  Tr. 539.  Dr. Billings also opined that Plaintiff was "unlikely to be employable at

---

[2]A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.  A GAF score between 41 and 50 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders-IV 32 (4th ed. 1994).  However, the ALJ has no obligation to credit or even consider GAF scores in the disability determination.  *See* Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").  In this case, the ALJ specifically indicated she gave little weight to the GAF scores of record finding "[s]uch scores reflect few specific functional limitations because they incorporate multiple factors not correlated to impairment related occupational difficulties."  Tr. 332.

her current mental state considering her depression symptoms, delusionary thought, and auditory hallucinations." Tr. 540.

The ALJ accorded Dr. Billings' opinions little weight because her opinion regarding employability was vague and conclusory and her assessed limitations were inconsistent with Plaintiff's reported daily activities. Tr. 332. The ALJ correctly determined Dr. Billings' conclusory opinion that Plaintiff was "unlikely to be employable at her current mental state" does not correlate with a finding of disability as defined by the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if she has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months). It is the role of the ALJ to determine whether a claimant is "disabled" within the meaning of the Social Security Act, and that determination is based on both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). As noted by the ALJ, Dr. Billings' report included few specific vocational limitations, and those mentioned; i.e., difficulty interacting frequently with the general public, did not necessarily prevent Plaintiff from engaging in substantial gainful activity. Tr. 332.

The ALJ also correctly found Plaintiff's activities of daily living, at that time, were inconsistent with Dr. Billings' assessed limitations. Tr. 332. As noted by the ALJ, Plaintiff indicated she lived alone and was able to shop for groceries, drive a car, and walk about two miles a day; had no difficulty preforming personal care or household chores; cooked her own meals and did her own laundry; spent the day writing in her journal, drawing or working in her garden, which included mowing the lawn and taking care of flowers; socialized with her adult son regularly; and had appropriate money management skills. Tr. 328, 331, 535-537. It is apparent Plaintiff's activities of daily living at that time were is inconsistent with a finding of significant work related limitations.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

Based on the foregoing, the undersigned finds the ALJ provided specific and legitimate reasons, supported by substantial evidence, for according little weight to Dr. Billings' August 2006 report.  Tr. 332.

### 2.    Roland Dougherty, Ph.D. – April 2007 Psychological Evaluation

On April 11, 2007, Plaintiff was examined by Roland Dougherty, Ph.D.  Tr. 198-205.  Plaintiff indicated she had been depressed for a while and did not like to be around people.  Tr. 198.  Plaintiff denied auditory hallucinations on this occasion, but described "a monster" that had followed her from childhood and an ability to see people that others could not see.  Tr. 199-200.  She reported feeling anxious in public (worse in crowds), but indicated she did not feel anxious at home.  Tr. 199.   Plaintiff stated, on an average day, she gets up around six a.m. and then cleans her house by vacuuming, sweeping, doing the dishes, ironing and dusting.  Tr. 204.  She described herself as a "neat freak" and reported she would clean her house all day.  Tr. 204.  Plaintiff also stated she is a good cook, can doodle for hours, can shop, is independent in her self-care, and visits her son once a week and a friend twice a month.  Tr. 204.  Plaintiff reported to Dr. Dougherty that she stopped drinking alcohol three years prior to the examination, but used to drink from the moment she got up in the morning until she went to bed at night, consuming six to 12 beers per day.  Tr. 200.  She stated she had only been intoxicated on one occasion and denied drinking had caused any problems in her life.  Tr. 201.  She also reported trying pot, acid, and cocaine about 20 years ago, but indicated she did not like these substances.  Tr. 201.

Dr. Dougherty diagnosed adjustment disorder with depression, chronic; social phobia; rule out schizoaffective disorder; alcohol abuse, in remission; and rule out language learning disorders and assessed a GAF score of 50.  Dr. Dougherty noted Plaintiff gave somewhat contradictory reports about her activities by indicating "she pretty much just lies around," but then stating "she very frequently moves the furniture around in the house," and also reporting she is

extremely active with housework. Tr. 200, 205. He opined that Plaintiff may have difficulty with written expression, but her social skills appeared adequate for the workplace. Tr. 205.

Although the parties' briefing does not discuss Dr. Dougherty's examination findings, the ALJ accorded weight to Dr. Dougherty's opinion, finding it consistent with the credible record evidence and with Plaintiff's reported daily activities at the time. Tr. 332. Dr. Dougherty's assessment is consistent with the ALJ's RFC determination in this case. Tr. 198-205, 329. The ALJ did not err by according weight to the opinion of this examining doctor.

### 3.    Mary A. Gentile, Ph.D. – June 2007 Medical Opinion

On June 12, 2007, state agency reviewing physician, Mary A. Gentile, Ph.D., opined that Plaintiff was able to carry out simple tasks, but her attention and concentration would slow for new tasks or those involving reading or writing. Tr. 221. She indicated Plaintiff would do best with routine tasks, working away from the public, and working with limited coworker interaction. Tr. 221. Dr. Gentile further opined that Plaintiff would need more time to learn new tasks, would benefit from demonstrations, and may need some assistance with goal setting. Tr. 221. Dr. Gentile filled out a Psychiatric Review Technique form indicating Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. Tr. 233. On May 9, 2008, Edward Beaty, Ph.D., reviewed the record and affirmed Dr. Gentile's opinion. Tr. 238.

The ALJ accorded these reviewing medical professionals "significant weight" because they had reviewed the entire medical record at that time and their opinions were consistent with Plaintiff's daily activities, including the ability to live alone, shop for groceries, drive a car regularly, perform household chores and cook meals. Tr. 332. The findings of these medical professionals were

incorporated in the ALJ's RFC determination.  Tr. 329.  The ALJ appropriately accorded their opinions weight in this case.

### 4.    Emergency Room Visit – June 15, 2008

On June 15, 2008, Plaintiff was treated at the Kittitas Valley Community Hospital due to agitation, persistent crying and emotional lability.  Tr. 279, 331. At that time, Plaintiff admitted to past cocaine, cannabis and methamphetamine abuse and reported she had used alcohol the night prior to the emergency room visit.  Tr. 279.  Plaintiff indicated she was distressed because her deceased mother's home was being torn down due to alleged methamphetamine contamination.  Tr. 279.  It was noted Plaintiff's presentation may have been secondary to recent drug use.  Tr. 279.

The ALJ cited this medical report to show the record contained little mental health evidence subsequent to the hospital visit and no additional medical evidence until March 2009, when Plaintiff sought treatment for back, neck and dental pain. Tr. 331.  The Court notes this emergency room record additionally evidences an apparent inconsistency in Plaintiff's reported drug and alcohol usage.

### 5.    DSHS "Other Source" Opinions

On June 26, 2006, Janet Gone, a social worker with DSHS, filed out a portion of Plaintiff's disability report.  Tr. 542-545.

Ms. Gone noted Plaintiff was "very anxious" and had difficulty with reading, writing, sitting and seeing.  Tr. 545.  Amanda Rowe, M.S., M.H.P, filled out a psychological/psychiatric evaluation form following a June 28, 2006, examination.  Tr. 617-620.  Ms. Rowe indicated Plaintiff had marked to severe impairments in depressed mood, verbal expression of anxiety or fear, social withdrawal, and paranoid behavior.  Tr. 618.  Ms. Rowe noted a marked limitation in Plaintiff's ability to exercise judgment and make decisions and a marked to severe limitation in Plaintiff's ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting.  Tr. 619.  Nina Rapisarda,

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

MSW, filled out a psychological/psychiatric evaluation form following a January 4, 2007, examination. Tr. 611-614. Ms. Rapisarda indicated Plaintiff had marked impairments in depressed mood, suicidal trends and verbal expression of anxiety or fear. Tr. 612. Ms. Rapisarda noted marked limitations in Plaintiff's abilities to relate appropriately to co-workers and supervisors and to respond appropriately to and tolerate the pressure and expectations of a normal work setting and a marked to severe limitation in Plaintiff's ability to interact appropriately in public contacts. Tr. 613.

Ms. Gone, Ms. Rowe and Ms. Rapisarda are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Consequently, their opinions do not qualify as medical evidence from an acceptable medical source as required by the Social Security Regulations. 20 C.F.R. § 416.927(a)(2) (only acceptable medical sources can give medical opinions). These individuals are considered "other sources," and an ALJ must provide germane reasons to reject "other source" evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ accorded "little to no weight" to the opinions of Ms. Gone, Ms. Rowe and Ms. Rapisarda. Tr. 332. The ALJ indicated the opinions of the DSHS social worker and the DSHS examiners were not consistent with the overall medical evidence or Plaintiff's daily activities at the time. Tr. 332. As discussed above, the ALJ appropriately accorded weight to the opinions of Drs. Dougherty, Gentile and Beaty, acceptable medical sources, and properly discounted the opinions of Dr. Billings in formulating her RFC determination. The opinions of Ms. Gone, Ms. Rowe and Ms. Rapisarda are inconsistent with the overall credible medical evidence of record prior to May 21, 2009. The ALJ also appropriately found the "other source" opinions were inconsistent with Plaintiff's reported activities of daily living at that time. As noted above, Plaintiff indicated she lived alone and was able to shop for groceries, drive a car, and walk about two miles a day; had no difficulty preforming personal care or household chores; cooked her

own meals and did her own laundry; spent the day writing in her journal, drawing or working in her garden; socialized with her adult son regularly; and had appropriate money management skills. Tr. 328. The undersigned finds the ALJ provided germane reasons for giving "little to no weight" to the "other source" opinions of Ms. Gone, Ms. Rowe and Ms. Rapisarda.

### 6.    After May 21, 2009, Medical Opinions

On May 21, 2009, the date the ALJ determined Plaintiff became disabled, Crisis Case Manager Cindy Gregory filled out a psychological/psychiatric evaluation form indicating Plaintiff had one severe, four marked and three moderate mental functional limitations. Tr. 303. On June 5, 2009, Trula J. Thompson, M.D., opined that Plaintiff "may meet SSI 12.04." Tr. 546. Less than three months later, on August 25, 2009, Crystal Coffey, Phar.D., filled out a mental residual functional capacity assessment form which indicated Plaintiff had several moderate and marked limitations. Tr. 317-319. In December 2010, Debra Dove, M.S., LMHC, noted that Plaintiff was homeless and living in a storage unit. Tr. 605-606. Ms. Dove opined that Plaintiff's functional levels were significantly impaired in the areas of maintaining housing, employment, social support, shopping, taking care of basic needs, and acquiring and maintaining entitlements. Tr. 606. Records from 2011 indicate Plaintiff had ongoing problems with anxiety and paranoia that caused serious limitations.

The ALJ accorded weight to the foregoing medical records which demonstrated Plaintiff developed marked or severe limitations in various aspects of social functioning and concentration, persistence and pace after May 21, 2009. Tr. 335-337. However, the ALJ indicated a June 5, 2009, opinion that Plaintiff's symptoms caused disabling limitations as early as 2005, Tr. 547, was inconsistent with the medical evidence of record and Plaintiff's reported daily activities prior to May 2009, Tr. 337. The Court notes that the medical report at Tr. 547 does not appear to be a medical opinion that Plaintiff's symptoms caused disabling

limitations as early as 2005.  In any event, as determined by the ALJ and discussed above, the credible record evidence and Plaintiff's daily activities prior to May 21, 2009, are inconsistent with a conclusion that Plaintiff's mental limitations were disabling prior to May 2009.

As stated above, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, a court may not second-guess that decision.  *Fair*, 885 F.2d at 604.  Based on the foregoing, the ALJ did not err by disregarding the medical reports indicated above, or portions thereof, when formulating her RFC assessment.  The ALJ's RFC determination is supported by substantial record evidence and free of legal error.

**B.    Listing 12.04**

Plaintiff contends that if the opinions of Dr. Billings, Ms. Rowe, Ms. Gone, Ms. Rapisarda, and Dr. Thompson were credited, the evidence would demonstrate the severity of Plaintiff's impairments met the criteria of Listing 12.04 (affective disorders) prior to May 21, 2009.

At step three, it is a claimant's burden to present objective medical evidence proving she meets or equals an identified Listing.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To show she meets a Listing, a claimant must establish she meets each criteria of the listed impairment relevant to her claim.  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Pursuant to Listing 12.04, a plaintiff is disabled if she has an affective disorder which is characterized "by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 C.F.R. § 404, Subpt. P, App. 1 § 12.04.  "The required level of severity for

these disorders is met when the requirements in both [paragraph] A and B [of the regulation] are satisfied, or when the requirements in [paragraph] C are satisfied." *Id.* Paragraph B requires Plaintiff to have "marked" limitations in two of the following categories: activities of daily living; social functioning; and concentration, persistence and pace, or repeated episodes of decompensation. 20 C.F.R. § 404, Subpt. P, App. 1 § 12.04.

The ALJ found that, prior to May 21, 2009, Plaintiff had mild restrictions in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with regard to concentration, persistence or pace. Tr. 328. Because the ALJ determined Plaintiff's mental impairments did not cause "marked" limitations, the ALJ concluded, at step three, Plaintiff's mental impairments did not meet or medically equal a Listings impairment. Tr. 328-329.

As discussed above, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting certain medical reports when formulating her assessment of Plaintiff's mental functioning prior to May 21, 2009. The ALJ's findings regarding Plaintiff's mental abilities are supported by substantial evidence. *Supra.* The evidence of record does not reflect that Plaintiff had marked limitations in activities of daily living, maintaining social functioning or maintaining concentration, persistence or pace prior to May 21, 2009. Accordingly, as determined by the ALJ, the criteria of paragraph B of Listing 12.04 is not satisfied, Tr. 328-329, and Plaintiff did not meet her burden of demonstrating that her mental impairments met or equaled Listing 12.04 prior to May 21, 2009. The ALJ did not err in her step three determination.

## C.    Credibility

Plaintiff also argues the ALJ erred by failing to provide clear and convincing reasons for finding Plaintiff's symptom allegations not credible. ECF No. 21 at 19-23.

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause many of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not fully credible prior to May 21, 2009. Tr. 330.

The ALJ first indicated the record shows no mental health treatment prior to May 2009. Tr. 330. The Ninth Circuit has determined that the fact that a claimant does not "seek treatment for a mental disorder until late in the day" is not a proper basis on which to find a doctor's assessment of a claimant's condition inaccurate. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness). However, in *Molina v. Astrue*, 674 F.3d 1104, 1113–1114 (9th Cir. 2012), the Ninth Circuit held it was reasonable for the ALJ to rely on a claimant's failure to seek psychiatric treatment in assessing her credibility because "there was no medical evidence that [claimant]'s resistance was attributable to her mental impairment rather than her own personal preference." Like *Molina*, Plaintiff in this case did not provide evidence demonstrating her failure to seek mental health

treatment was due to her mental impairments.  Without such evidence, it was reasonable for the ALJ to conclude Plaintiff's lack of mental health treatment prior to May 2009 weakened her credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (in assessing a claimant's credibility, an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment").

The ALJ also found that the little medical evidence existing prior to May 2009 was consistent with her RFC determination.  Tr. 330.  A lack of supporting objective medical evidence supporting a claimant's subjective complaints is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  As discussed above, the ALJ properly assessed the medical evidence in this case. *Supra*.  The objective medical findings contained within the record demonstrate Plaintiff is capable of performing medium exertion, simple, repetitive work, with several non-exertional limitations.  Tr. 329.  The credible medical evidence of record does not support Plaintiff's claim of disabling limitations; therefore, it was appropriate for the ALJ to conclude the objective medical evidence does not support the level of limitation Plaintiff has alleged in this case.

The ALJ next noted Plaintiff's activities of daily living prior to May 2009 were inconsistent with her assertion of disabling mental limitations.  Tr. 331.  It is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ indicated Plaintiff's allegations of disability were inconsistent with the record evidence which demonstrated that, prior to May 2009, Plaintiff lived alone and was able to shop for groceries, drive a car, and walk about two miles a day; had no difficulty preforming personal care or household chores; cooked her own meals and did her own laundry; spent the day writing in her journal, drawing or working in her garden; and socialized with her adult son regularly.  Tr. 331.
///

This evidence of Plaintiff's activities of daily living is inconsistent with her claim of disabling limitations.

Lastly, the ALJ indicated Plaintiff's inconsistent statements created credibility concerns. Tr. 331. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *Veruzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (untruthfulness or inconsistencies regarding alcohol or substance abuse support an ALJ's decision that a claimant's testimony lacks credibility). Here, the ALJ indicated Dr. Dougherty reported Plaintiff had given a somewhat contradictory report because Plaintiff indicated she lies around during the day but also stated she was extremely active all day. Tr. 200, 205, 331. The ALJ further noted Plaintiff's report regarding substance use was inconsistent because she reported to Dr. Dougherty she had a distant history of marijuana, acid, and cocaine use and had used alcohol heavily until she stopped in 2004, Tr. 200-201, but later reports suggested she continued to use alcohol and possibly drugs, Tr. 279. Plaintiff also subsequently denied any history of drug or alcohol use. Tr. 247, 392-393.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the undersigned finds the reasons provided by the ALJ for discounting Plaintiff's subjective complaints prior to May 2009 are clear, convincing, and fully supported by the record. The ALJ did not err by concluding ///

Plaintiff's assertions of disabling impairments prior to May 2009 were not fully credible in this case.

**D.    Hypothetical to Vocational Expert**

Plaintiff next argues the ALJ erred by not including all of Plaintiff's functional limitations in her RFC determination, thus resulting in the presentation of an incomplete hypothetical to the vocational expert (VE).  ECF No. 21 at 27-29.

The ALJ may rely on VE testimony if the hypothetical presented to the VE includes all functional limitations supported by the record and found credible by the ALJ.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  An ALJ is not obliged to accept the limitations presented by Plaintiff's representative.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-1165 (9th Cir. 2001); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  It is the province of the ALJ to make a final determination regarding Plaintiff's RFC and disability.

As discussed above, the ALJ's rationale for her mental RFC determination was legally sufficient and supported by substantial evidence in the record.  Therefore, the ALJ was not required to include any further restrictions in her RFC assessment or the hypotheticals presented to the VE.  The hypotheticals presented to the VE at the administrative hearing and relied upon by the ALJ, Tr. 400, 403, were proper because they reflected the ALJ's RFC determination which is a reasonable interpretation of the evidence of record.  *Supra*.

The VE testified Plaintiff's RFC would not prevent her from performing any of her past work.  Tr. 400.  In addition, the VE testified that work existed in significant numbers in the national economy that an individual with Plaintiff's background, characteristics and assessed limitations could perform, including the jobs of cashier II, laundry worker II and counter attendant, cafeteria.  Tr. 401-405.  Accordingly, the ALJ did not err by relying on the VE testimony that an individual with Plaintiff's profile could perform not only her past work, but also other work that existed in significant numbers in the national economy.

1

**CONCLUSION**

2          Having reviewed the record and the ALJ's findings, the Court concludes the

3   ALJ's decision is supported by substantial evidence and free of legal error.

4   Accordingly,

5          **IT IS ORDERED:**

6          1.      Defendant's Motion for Summary Judgment, **ECF No. 23**, is

7   **GRANTED**.

8          2.      Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

9          The District Court Executive is directed to file this Order and provide a copy

10  to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant

11  and the file shall be **CLOSED**.

12         DATED April 11, 2014.

13

14    _____

15                                  JOHN T. RODGERS
                            UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION . . . - 22